IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3099-FL

| | | |
|---|---|---|
| ANTHONY CLARENCE CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PAULA SMITH; JERRY LEGGETT; | ) | |
| AND EURGIA LAND, | ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on the motion to dismiss pursuant to Federal Rules of Civil Procedure 4, 12(b)(5), and 12(b)(6) (DE # 18), motion to stay (DE # 29), and motions for protective order (DE # 33, 38) filed by defendants Dr. Eurgia Land ("Land") and Physicians Assistant Jerry Leggett ("Leggett"). Also before the court is Dr. Paula Smith's motion for summary judgment (DE # 40) pursuant to Rule 56. Plaintiff responded to each of defendants' motions except the second motion for a protective order. In this posture, the matters are ripe for adjudication. For the following reasons, defendants' respective dispositive motions are granted, and the remaining motions are denied as moot.

**STATEMENT OF THE CASE**

On June 7, 2011, plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983, alleging that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Land and Leggett subsequently moved to dismiss plaintiff's complaint for the following reasons: (1) insufficiency of service of process

1

pursuant to Rules 4 and 12(b)(5); (2) failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6); (3) failure to state a claim for injunctive or declaratory relief; and (4) failure to state a claim for punitive damages. Alternatively, Land and Leggett assert the affirmative defense of qualified immunity. These defendants then filed a motion to stay the court's case management order and two motions requesting a protective order.

Following the motion to dismiss, Smith filed a motion for summary judgment arguing that plaintiff's claims are without merit. Alternatively, Smith raises the defense of qualified immunity. The matter was fully briefed.

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, plaintiff makes the following allegations. In May 2007, while housed at Marion Correctional Institution ("Marion"), plaintiff began experiencing pain and discomfort in his left knee. "Plaintiff discovered a marble[-]like object just beneath the skin that could be felt and moved around the area of [his] left knee with the tips of his fingers." Compl. p. 3. The marble-like object "move[d] about freely when [plaintiff was] walking" or otherwise moving his left knee and, at times, "disappear[ed] behind the kneecap." Id. pp. 3-4.

In October 2007, plaintiff submitted a sick call request stating that he "felt that [the] marble-like object was possibly the cause of his pain and discomfort." Id. pp. 3-4. The screening nurse gave plaintiff several packets of Ibuprofen for the pain and inflamation. Id. p. 4. The nurse also instructed plaintiff to report back to the medical station a couple of days later to see the facility physician Dr. Turpin ("Turpin") for his knee pain. Id.

2

Turpin subsequently examined plaintiff's knee and submitted an order for electromagnetic radiation (x-ray) tests of plaintiff's knee. Id. p. 6. Upon receiving plaintiff's x-ray results, Turpin told plaintiff that they were negative "for any damage to the bone in the area of the left knee." Id. Turpin then conducted a second examination of plaintiff's knee and reported that there was some fluid built up around the left knee and possible ligament damage. Id. Turpin further informed plaintiff that an magnetic resonance imaging ("MRI") test would help properly diagnose plaintiff's condition "because an x-ray only shows the bone structure." Id. Turpin submitted a request with the North Carolina Department of Public Safety's ("DPS") Utilization Review Board ("URB") for an MRI of plaintiff's knee, which was denied. Id. p. 7. The URB, however, approved Turpin's prescription for Glucosamine and physical therapy. Id. Plaintiff's Glucosamine prescription subsequently was discontinued because it did not afford plaintiff relief. Id. Plaintiff states that he did not receive physical therapy. Id.

On December 28, 2008,[1] plaintiff injured his knee while playing basketball at Odom Correctional Institution ("Odom"). Id. p. 8. In particular, plaintiff states that he "felt something pop in the area of his left knee" and "felt an extreme throbbing pain." Id. Plaintiff then declared a medical emergency. Id. Because there was no medical staff at Odom on the weekend, the officer in charge called medical staff at Maury Correctional Institution ("Maury") for assistance. Id. The officer in charge also supplied plaintiff with an ace bandage, a crutch, and an ice pack. Id. pp. 8-9. Finally, plaintiff was directed to take Ibuprofen as ordered. Stover Aff.[2] Ex. B, p. 55.

---

[1] Plaintiff alleges that he injured his left knee playing basketball sometime in 2009. However, plaintiff's medical records indicate that his basketball injury occurred on December 28, 2008. Stover Aff. Ex. B, p. 30.

[2] Dr. Phillip E. Stover ("Stover") submitted an affidavit in support of defendant Smith's motion for summary judgment. Mem. in Supp. of Mot. for Summary J. Ex. A. Stover is a licensed physician on contract with the DPS. Id. ¶ 3.

3

The next day, Land examined plaintiff. Plaintiff's medical records indicate that he had minimal knee tenderness, but no edema or effusion. Stover Aff. Ex. B, p. 30. Plaintiff's medical records further indicate that he had full range of motion in his knee and a normal gait. Compl. p. 9. As a result, Land diagnosed plaintiff with a minor sprain. Stover Aff. Ex. B, p. 30. Plaintiff states that he informed Land about his previous knee complaints, and that Land told him that the pain would go away. Compl. pp. 9-10. In response to plaintiff's inquiries regarding an MRI, Land stated that the test was too expensive and that he did not think it was necessary. Plaintiff states that Land then confiscated his Ace bandage and crutch. Id. p. 10. Plaintiff's medical records indicate that Land encouraged plaintiff to use inner soles and to avoid excess jumping or squatting. Stover Aff, Ex. B, p. 30. Land did not prescribe any pain medication at that visit. Compl. p. 10.

At some point plaintiff was transferred to Eastern Correctional Institution ("Eastern"). Id. p. 11. In response to plaintiff's knee complaints on September 27, 2010, Leggett examined his knee. Id. p. 12. Plaintiff told Leggett that a marble-like substance on his knee caused pain and pressure when he walked or bent his left leg. Id. In response, Leggett ordered x-rays and prescribed Acetaminophen. Id. Leggett also explained to plaintiff that his knee condition was common and that many people lived with it. Id. On October 21, 2010, Nurse King ("King") informed plaintiff that his x-rays revealed signs of arthritis and calcium deposits. Id. p. 13. King also stated that there were no signs of a marble-like object in his knee. Id.

On October 26, 2010, plaintiff sent Smith a letter complaining that he was receiving inadequate medical treatment. Id. Plaintiff requested that Smith order an MRI. Plaintiff states that Smith did not respond to his letter. Id.

On October 29, 2010, plaintiff again saw Leggett for his knee discomfort. Id. Leggett again explained that the results of his x-rays showed mild arthritis and calcium deposits. Id. Leggett prescribed plaintiff "an Ace brand knee support with a patella opening for pain relief and instability." Id. p. 14. Leggett did not respond to plaintiff's request for an MRI. Id.

From October 2010 through April 2011, plaintiff submitted sick call request forms regarding his knee. Id. On January 3, 2011, plaintiff submitted an inmate sick call request form complaining that he continued to "suffer from pain in the area of [his] knee from the marble-like object moving around underneath the skin." Id. Plaintiff was referred for an appointment with Leggett on January 6, 2011.[3] Plaintiff submitted a second sick call request form on January 18, 2011, because he had not yet seen Leggett. Id. p. 15.

On January 28, 2011, Leggett examined plaintiff. Id. Plaintiff told Leggett that he continued to experience pain in his left knee and that his left knee brace keeps the marble-like object suppressed behind the kneecap. Id. Plaintiff also told Leggett that his knee condition was beginning to affect his mobility and everyday activities such as work and recreation. Id. pp. 15-16. In response, Leggett told plaintiff that he would lower plaintiff's health grade which would place restrictions on his activities. Id. Plaintiff in turn asked if lowering his health grade would fix the problems with his left knee. Leggett responded that there was nothing further he could do and instructed plaintiff to continue taking Acetaminophen as needed. Id.

On February 27, 2011, plaintiff submitted a sick call request form complaining that there was a marble-like object underneath the skin on his left knee, and suggested an MRI. Id. p. 16. Plaintiff was screened by Nurse King on March 4, 2011. Id. Nurse King noted the issue and consulted with

---

[3] Plaintiff states that he was referred to an appointment with Leggett on January 6, 2010, but it appears from the context of his complaint that he was referred for the appointment on January 6, 2011. Compl. p. 14.

5

Leggett. Leggett instructed Nurse King to record plaintiff's condition and to schedule an appointment. Id. p. 17. Plaintiff submitted additional sick call request forms on March 20, 2011, and April 10, 2011. Id. After each sick call request, plaintiff was screened by Nurse King and scheduled for an appointment with Leggett. Id. Plaintiff states that Leggett "failed to respond to any of [the] referrals." Id. p. 18. Plaintiff states that he has not had an appointment with Leggett concerning his knee since January 28, 2011. Id.

## DISCUSSION

A.   Dispositive Motions

   1.   Standard of Review

Both a motion to dismiss and a motion for summary judgment are pending before the court. A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when

accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two-pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 533 U.S. 223 (2009). A court has discretion to decide which step of the two-prong test to analyze first. Pearson, 533 U.S. at 241. The court first addresses whether defendants violated plaintiff's constitutional rights.

To state a claim for relief under the Eighth Amendment of the United States Constitution, a plaintiff must establish that a prison official was deliberately indifferent to a serious condition, medical need, or risk of harm. See Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

1. Land and Leggett

The court focuses its Eighth Amendment analysis of plaintiff's claim against Land and Leggett on the second prong of the test–whether these defendants acted with deliberate indifference to his medical needs. "Deliberate indifference entails something more than mere negligence, . . .

8

[but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Beginning with plaintiff's claim against Land, plaintiff concedes that Land examined him following his basketball-related injury and found no serious injury. Plaintiff further concedes that Land instructed him that an MRI was unnecessary due to the minor nature of his injuries. These facts are supported by plaintiff's medical records. Stover Aff. Ex. B, p. 30. In response to plaintiff's complaints of pain, Land recommended that he avoid excessive jumping or squatting and that he use inner soles. Id. Although plaintiff complains that Land took away his Ace bandage and crutch, plaintiff does not allege that Land's actions were undertaken to knowingly cause plaintiff harm. Moreover, plaintiff does not allege that he expressed any further knee-related complaints to Land after the basketball injury incident.

As for Leggett, plaintiff concedes that he ordered diagnostic testing, including x-rays, and diagnosed him with arthritis and calcium deposits. Plaintiff further concedes that Leggett prescribed Acetaminophen and an Ace bandage for his knee pain. Leggett also offered to lower plaintiff's health grade to restrict his activities to assist with pain management. Despite these treatment efforts,

9

plaintiff continued to request an MRI, and Leggett instructed plaintiff that he did not feel that such a test was necessary.

Plaintiff's allegations in his complaint reflect that both Land and Leggett were responsive to plaintiff's knee-related complaints. Plaintiff primarily complains that defendants acted with deliberate indifference because they refused to provide an MRI at his request. Plaintiff's repeated requests for an MRI amount to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. It is well settled that such a disagreement does not constitute an Eighth Amendment claim. See id. Moreover, although plaintiff asserts that the efforts of Land and Leggett in diagnosing and treating his medical needs were not effective, the fact that their treatment of him was not effective does not give rise to a constitutional violation. See Williams v. Branker, 462 F. App'x 348, at *4 (4th Cir. Jan. 20, 2012) ("Williams points to no authority for the proposition that the Eighth Amendment entitles him to 'effective' treatment."); see e.g., Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009). At most, these defendants' conducts could be construed as negligence, which is not sufficient to state a constitutional violation. See Estelle, 429 U.S. at 105-106.

To the extent that plaintiff contends that Leggett refused to provide him with medical treatment from October 2010, through April 2011, the evidence in the record belies plaintiff's allegations. For instance, plaintiff's medical records reflect that Eastern medical staff evaluated plaintiff for his knee condition on November 18, 2010, January 6, 2011, March 4, 2011, April 14, 2011, and June 30, 2011. See Stover Aff. Ex. B, pp. 38-43. Plaintiff's medical records also reflect that he failed to show up for an appointment scheduled on March 25, 2011. Id. p. 39. Because plaintiff's medical records indicate that medical staff at Eastern were responsive to plaintiff's

10

complaints of knee pain and provided him regular medical care for his condition, the record contradicts plaintiff's allegations of deliberate indifference.

Based upon the foregoing, plaintiff's allegations are not sufficient to establish the subjective element of his Eighth Amendment deliberate indifference claim against Land or Leggett, and there is no constitutional violation. Thus, Land and Leggett are entitled to qualified immunity for plaintiff's claim, and their respective motions to dismiss are GRANTED.

      2.      Smith

Plaintiff's chief complaint against DPS Medical Chief Smith is that she failed to respond to his October 26, 2010, letter requesting an MRI of his knee. DPS Medical Consultant Dr. Phillip E. Stover submitted an affidavit stating that the marble-like nodule on plaintiff's knee is a collection of calcification that has been seen on two x-rays and has been palpated by multiple providers on multiple occasions. Stover Aff. ¶ 8. The medical records reflect that the module is outside of the joint and, thus, unlikely to be causing any significant joint pain or the cause of his chronic knee pain. Id. Rather, plaintiff's medical records reflect that his pain likely is caused by his diagnosis of mild osteoarthritis. Id. ¶ 9. Dr. Stover states that there is no proven surgical approach to osteoarthritis, rendering an MRI unnecessary. Id. ¶ 12. There is no evidence that plaintiff required MRI testing or that Smith's decision not to refer him for an MRI was made with the purpose of causing harm or with knowledge that harm would result. Rather, it appears that the limitations characteristic in the medical treatment of osteoarthritic pain are the cause of plaintiff's dissatisfaction. Finally, to the extent plaintiff alleges that medical professionals disagreed over how best to treat him, such disagreement does not support a claim for deliberate indifference. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); Bowing v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

11

Based upon the foregoing, plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim. Thus, there is no constitutional violation, and Smith is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Land and Leggetts' motion to dismiss (DE # 18) and Smith's motion for summary judgment (DE #s 40) are GRANTED. Because the court granted defendants' respective dispositive motions, the motions for a protective order (DE #s 33, 38) and motion to stay (DE # 29) are DENIED as moot.

SO ORDERED, this the 15th day of February, 2013.

*[signature]*

LOUISE W. FLANAGAN
United States District Judge